## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

ZOMINA MONTGOMERY,        )
        )
    Plaintiff,        )
        )
v.        )
        )    No. 2:26-cv-02412-TLP-atc
ZERRICK TAYLOR, in his individual    )
capacity, and MICHAEL SAULSBERRY,    )
in his individual capacity,    )
        )
    Defendants.        )

## REPORT AND RECOMMENDATION FOR DENIAL OF INJUNCTIVE RELIEF AND FOR *SUA SPONTE* DISMISSAL

On April 13, 2026, Plaintiff Zomina Montgomery filed a *pro se* Complaint and motion to proceed *in forma pauperis*, which the Court granted on April 20, 2026. (ECF Nos. 2–3, 8.) Montgomery also filed an *ex parte* Motion for Temporary Restraining Order and Preliminary Injunction on April 13th. (ECF No. 4.) Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.[1]

For the following reasons, it is recommended that the motion for injunctive relief be denied and this case be dismissed *sua sponte* for lack of subject matter jurisdiction.

---

[1] A motion for a preliminary injunction is considered a dispositive motion and thus requires disposition by report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A), (B); *Vogel v. U.S. Off. Prod. Co.*, 258 F.3d 509, 514 (6th Cir. 2001) ("Pretrial matters that a magistrate judge is precluded from 'determining' pursuant to § 636(b)(1)(A) are called 'dispositive' because they are 'dispositive of a claim or defense of a party.'" (citing Fed. R. Civ. P. 72)).

**PROPOSED FINDINGS OF FACT**

Montgomery's claims arise from a child custody proceeding before the Shelby County Juvenile Court ("Custody Proceeding").  (ECF No. 2.)  In her Complaint, Montgomery alleges violations of her Fourteenth Amendment rights against Defendant Zerrick Taylor and supervisory liability pursuant to 42 U.S.C. § 1983 against Defendant Michael Saulsberry.  (*Id.* at 8–9.)  Taylor is the Department of Children's Services ("DCS") case manager who investigated allegations reported by Montgomery regarding her minor child, and Saulsberry was allegedly Taylor's supervisor.  (ECF 2, at 9; ECF No. 2-1, at 2.)  Montgomery claims that "procedural corruption, investigative abandonment, and material falsifications by the Defendants" during the investigation underlying the Custody Proceeding "resulted in the state-sanctioned interference with the Plaintiff's fundamental liberty interest in familial integrity."  (*Id.* at 4.)  She requests declaratory relief, injunctive relief, compensatory damages in the amount of $10,000,000, and punitive damages in the amount of $40,000,000.  (*Id.* at 9–10.)

Montgomery's motion for injunctive relief concerns an upcoming Juvenile Court custody hearing on April 27, 2026.  (ECF No. 4, at 1.)  Montgomery asks the Court to enjoin Defendants "and any state actors relying upon their officially generated records, from utilizing the fabricated Department of Children's Services . . . investigative file in the upcoming" custody hearing set for April 27, 2026.  (*Id.*)  Montgomery contends that, due to the state's reliance on the allegedly fabricated investigative file, two Memphis police officers arrived at her home on March 27, 2026, "to enforce a custody arrangement procured exclusively through the Defendants' judicial deception."  (*Id.*)

Montgomery then sets forth a timeline of events, which she alleges is supported by "official documentary evidence" as detailed in the Complaint, and asserts that the evidence

2

proves that "Defendants committed material falsification of official records and judicial deception." (*Id.*)  She identifies two alleged material falsifications contained in the investigative file, in addition to one instance of "suppression of forensic medial evidence" and one instance of "judicial deception." (*Id.* at 1–2.)

The first alleged material falsification concerns Taylor's January 26, 2026 interview, which stated that the minor child was present during the interview. (*Id.* at 2.)  Montgomery represents that this "was a physical impossibility, as the child was in the Plaintiff's exclusive physical custody from January 22 through January 30, 2026." (*Id.*)  The second material falsification concerns the identities of individuals who allegedly attempted to assault Montgomery. (*Id.*)  Montgomery states that she reported to the DCS hotline that "her child's paternal relatives attempted to assault her," but "in his official presentation to the Child Protective Investigative Team . . . on March 5, 2026, Defendant Taylor explicitly swapped the suspects' identities to claim the Plaintiff's paternal grandfather and uncle attempted the assault." (*Id.*)  As to the instance of alleged suppression of forensic evidence, Montgomery claims that Defendants approved the closure of the underlying investigation on March 24, 2026, despite the fact that the results of a forensic rape kit conducted on the minor child at the Crime Rape Victim Center remained pending. (*Id.*)  Finally, Montgomery states that Taylor omitted the existence of the pending rape kit while testifying before the Juvenile Court and testified that the case was closed and that the Child Advocacy Center documented only "partial disclosures," which led the Guardian ad Litem to "falsely speculate that the disclosures implicated the Plaintiff." (*Id.*)  Montgomery avers that her possession of documents proving these instances of alleged misconduct supports a finding that "she has an exceptionally high likelihood of success on her 42 U.S.C. § 1983 claims." (*Id.*)

## PROPOSED CONCLUSIONS OF LAW

I.    **Standards of Review**

   A.    Subject Matter Jurisdiction

"A complaint is subject to dismissal under Rule 12(b)(1) if the facts, accepted as true and viewed in the light most favorable to the plaintiff, show that the court lacks subject-matter jurisdiction." *Nesselrode v. Sec'y of U.S. Dep't of Educ.*, No. 17-4206, 2018 WL 6975166, at *2 (6th Cir. June 18, 2018). "*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed." *Woodson v. Woodson*, No. 2:22-mc-00003-TLP-tmp, 2022 WL 16985602, at *2 (W.D. Tenn. Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 16963997 (W.D. Tenn. Nov. 16, 2022) (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). "Even so, *pro* se litigants must adhere to the Federal Rules of Civil Procedure, . . . and the court cannot create a claim that has not been spelled out in a pleading." *Id.* (citations omitted).

"At any time in a case and of its own volition, a district court may examine whether a complaint lacks subject matter jurisdiction." *Coleman v. Juv. Ct. of Memphis & Shelby Cnty. TN*, No. 2:17-cv-2524-SHL-tmp, 2017 WL 10607262, at *2 (W.D. Tenn. Aug. 29, 2017), *report and recommendation adopted*, No. 2:17-cv-02524-SHL-tmp, 2018 WL 5298155 (W.D. Tenn. Oct. 25, 2018), *aff'd sub nom. Coleman v. Juv. Ct. of Memphis*, No. 18-6245, 2019 WL 2298965 (6th Cir. Apr. 10, 2019); *see also Coleman v. Juvenile Court of Memphis*, No. 18-6245, 2019 WL 2298965, at *1 (6th Cir. Apr. 10, 2019) (affirming *sua sponte* dismissal of the complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine); *Squire v. Coughlan*, 469 F.3d 551, 555–56 (6th Cir. 2006) (affirming *sua sponte* dismissal of the complaint for lack of subject matter jurisdiction under *Younger* abstention).

4

B.    Injunctive Relief

"A preliminary injunction is an 'extraordinary remedy,' not a matter of right." *Patel v. Glenn*, No. 21-3499, 2022 WL 16647974, at *3 (6th Cir. Nov. 3, 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Preliminary injunctions that alter the status quo are specifically disfavored." *Eads v. Tennessee*, No. 1:18-cv-00042, 2019 WL 2443125, at *1 (M.D. Tenn. June 12, 2019) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005)).

"To secure a preliminary injunction, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. Apr. 14, 2025) (quoting *Winter*, 555 U.S. at 20). "Because a preliminary injunction 'is an extraordinary equitable remedy that is never awarded as of right,' the plaintiff must make a 'clear showing' that these factors favor him." *Id.* (quoting *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024)); *see also Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) ("[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion, for example."). The factors are balanced against each other, and proving all four is not necessary to secure a preliminary injunction. *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998)).

Notwithstanding that balancing, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th

5

Cir. 2000) (citing *Mich. St. AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). "The Sixth Circuit has stated that the district court need not 'make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" *Doe v. Rhodes Coll.*, No. 2:16-cv-02308-JTF-tmp, 2016 WL 11611619, at *4 (W.D. Tenn. Oct. 25, 2016) (quoting *Jones v. City of Monroe, Mich.*, 341 F.3d 474, 476 (6th Cir. 2003)).

"[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)); *see also Harris v. Wells Fargo Bank, N.A.*, No. 2:18-cv-2400-JPM-dkv, 2018 WL 4896727, at *1 (W.D. Tenn. Oct. 9, 2018) ("A preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits, but if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required." (quoting *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004))).

## II.     Dismissal for Lack of Subject Matter Jurisdiction

Because Montgomery seeks an injunction regarding ongoing state-court child custody proceedings, the Court must first consider whether that request is barred by the Anti-Injunction Act, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

6

As to the first exception, Montgomery argues that the Supreme Court "has unequivocally held that actions brought under 42 U.S.C. § 1983 constitute an 'expressly authorized' exception to the Anti-Injunction Act." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). Montgomery fails to recognize, however, that the Supreme Court also reiterated "the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Id.* at 243. "[T]he *Younger* abstention doctrine remains, even under *Mitchum*, a separate hurdle for section 1983 plaintiff[]s to overcome . . . ." *Alexander v. Margolis*, 921 F. Supp. 482, 484 n.1 (W.D. Mich. 1995), *aff'd.* 98 F.3d 1341 (6th Cir. 1996).[2]

"Under *Younger* abstention, absent unusual circumstances . . . , a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved." *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008) (citing, e.g.,

---

[2] Because Montgomery's claims concern the state-court Custody Proceeding, the domestic-relations exception to federal-court jurisdiction may also apply. Federal courts have no "subject matter jurisdiction over 'domestic relations disputes involving child custody or divorce.'" *Dep't of Childs. Servs. v. Cleaves-Farris*, No. 2:22-cv-02197-TLP-tmp, 2022 WL 16963241, at *1 (W.D. Tenn. Nov. 16, 2022) (quoting *Partridge v. Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003)); *see also Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003). "This exception recognizes that 'the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.'" *Starnes v. Starnes*, 2:25-CV-138-DCLC-crw, 2025 WL 2965131, at *2 (E.D. Tenn. Oct. 20, 2025) (quoting *In re Burrus*, 136 U.S. 586, 593–94 (1980)). "Although this domestic relations exception to federal jurisdiction does not apply to a civil action that merely has domestic relations overtones, federal courts lack jurisdiction where the action is a mere pretense, and the suit is actually concerned with domestic relation issues." *Landon v. Cnty. of Daviess Fam. Ct.*, No. 4:20-cv-19-JHM, 2020 WL 1066996, at *2 (W.D. Ky. Mar. 5, 2020) (quoting *Danforth*, 76 F. App'x at 616). "In determining whether the domestic relations exception applies, 'we must focus on the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?'" *Id.* (quoting *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015)). Here, Montgomery asks this Court to enjoin Defendants from relying on certain records in the Custody Proceeding, specifically in a hearing scheduled to occur on April 27, 2026. By asking this Court to interfere with the admissibility of evidence at that child-custody hearing, Montgomery effectively asks this Court to impact the outcome of the child-custody determination.

*Younger v. Harris*, 401 U.S. 37, 41, 91 (1971)).  Three factors indicate whether *Younger*

abstention is appropriate: "(1) there must be on-going state judicial proceedings; (2) those

proceedings must implicate important state interests; and (3) there must be an adequate

opportunity in the state proceedings to raise constitutional challenges."  *Id.* at 643 (quoting *Sun*

*Refin. & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990)).

As to the first consideration, the Custody Proceeding is indisputably ongoing, as there is a

custody hearing set before the state court on April 27, 2026.  (ECF No. 4, at 1.)  As to the second

consideration, a "child-custody proceeding implicates important state interests."  *Berg v. Irwin*,

No. 3:22-cv-325, 2022 WL 17573910, at *3 (E.D. Tenn. Dec. 9, 2022) (dismissing the case

under *Younger* abstention when the plaintiff's "grievances in his complaint center on the

interference with his 'liberty interest in rearing his children,' as a result of the

state child custody proceeding"); *see also Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F.

App'x 201, 204 (6th Cir. 2001) ("[A]bstention is generally appropriate in matters of family

relations such as child custody.") (collecting cases).  As to the third consideration, Montgomery

has offered nothing to show that Tennessee bars litigation of federal constitutional claims in

juvenile court proceedings, and she has not identified any legitimate constitutional concerns

arising from the Custody Proceeding itself.  *See Robinson v. Tansley*, No. 2:23-cv-02589-SHL-

atc, 2024 WL 4151160, at *5 (W.D. Tenn. Sept. 11, 2024) ("Courts presume that state courts are

able to protect the interests of the federal plaintiff." (citing *Kelm v. Hyatt*, 44 F.3d. 415, 420 (6th

Cir. 1995)); *Berg*, 2022 WL 17573910, at *3 (finding the third *Younger* factor satisfied when

there was "no allegation that [the plaintiff] would have inadequate opportunity to raise his

constitutional arguments in the custody proceeding before the Knox County Juvenile Court" and

when the plaintiff had a "right to appeal any decision entered by [the Juvenile Court judge] to the

Knox County Circuit Court and the right to appeal a final judgment to the Tennessee Court of Appeals"). Because the three *Younger* factors are satisfied, Montgomery must pursue this matter to completion in state court, and this Court should abstain and dismiss this case for lack of subject matter jurisdiction and deny her motion for injunctive relief. *See Bleavins*, 2022 WL 885176, at *6 (denying motions for injunctive relief for having no chance of success on the merits and dismissing the case for lack of subject matter jurisdiction under *Younger* because "[t]he Court . . . lacks jurisdiction to even entertain Plaintiffs' claims").

Montgomery asserts that the Supreme Court established "strict exceptions where the state proceeding is characterized by 'bad faith, harassment, or other unusual circumstances that would call for equitable relief'" (ECF No. 4, at 3 (citing *Younger*, 401 U.S. at 54), but she has failed to establish such circumstances here. At most, Montgomery makes conclusory allegations that Defendants "actively fabricated official records, concealed exculpatory forensic evidence, and committed perjury." (*Id.*) These allegations, without more, cannot sustain a finding of bad faith, harassment, or unusual circumstances sufficient to justify intervention into the Custody Proceeding itself. *See Tindall v. Wayne Cnty. Friend of Ct.*, 269 F.3d 533, 539 (6th Cir. 2001) (finding that exceptions to *Younger* abstention are "exceedingly rare, particularly where a plaintiff seeking to defeat an abstention argument has failed to avail himself first of state appellate processes before seeking relief in federal court"). Accordingly, abstention is required, and Montgomery's case should be dismissed and the motion for injunctive relief denied.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that Montgomery's motion for injunctive relief be denied and that this case be dismissed *sua sponte* for lack of subject matter jurisdiction.

Respectfully submitted this 20th day of April, 2026.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute forfeiture/waiver of objections, exceptions, and further appeal.